IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **Jeffrey Parchman, on behalf of himself and all others similarly situated,** ) ) ) **Plaintiff** ) ) v. ) ) **SLM Corporation, Navient Corporation and Navient Solutions Inc. f/k/a Sallie Mae, Inc.** ) ) ) **Defendants** ) | Case No. _____ JURY DEMAND |

**COMPLAINT – CLASS ACTION**

Plaintiff Jeffrey Parchman, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel and on information and belief as follows:

**NATURE OF ACTION**

1. Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of SLM Corporation, Navient Corporation and Navient Solutions Inc. f/k/a Sallie Mae, Inc. (individually and collectively "Defendants") and/or other affiliates or subsidiaries of Defendants in negligently, knowingly and/or willfully contacting Plaintiff on Plaintiff's cellular telephone without his prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2. SLM Corporation ("SLM") is a Delaware corporation that has its principal place of business at 300 Continental Drive, Newark, Delaware 19713.

3. Navient Corporation is a Delaware corporation that has its principal place of business at 123 Justison Street, Wilmington, Delaware 19801. Navient Corporation was incorporated on November 7, 2013.

4. On April 30, 2014, SLM and Navient Corporation completed a plan to legally separate into two distinct publicly traded entities - an education loan management, servicing and asset recovery business: Navient Corporation, and a consumer banking business: SLM.

5. Navient Solutions Inc. f/k/a Sallie Mae, Inc. ("Navient Solutions") is a Delaware corporation that has its principal place of business at 2001 Edmund Halley Dr, Reston, Virginia 20191. Upon information and belief, prior to April 30, 2014 Navient Solutions was a subsidiary of SLM, and since April 30, 2014 Navient Solutions has been a subsidiary of Navient Corporation.

6. Defendants themselves, and through their subsidiaries, provide education finance throughout the United States. Until the April 30, 2014 split-off of Navient Corporation, SLM and Navient Solutions' primary business was to originate and service student loans by providing funding, delivery, and servicing support for education loans. Navient Corporation and Navient Solutions assumed this role as of April 30, 2014. Defendants have affiliates and subsidiaries other than Defendants, which engage in various businesses.

## JURISDICTION AND VENUE

7. This matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity

jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction. This action also involves determination of a Federal Question under 28 U.S.C. § 1331.

8. Venue is proper in the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. §§ 1391 and 123, because Defendants are corporations that are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction. Venue is also proper in this District because Plaintiff has resided in this District at all times relevant to these claims such that a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

9. Plaintiff is, and at all times mentioned herein was, an individual citizen of the State of Tennessee, who resides in Ripley, Tennessee.

10. On information and belief, Plaintiff alleges that Defendants are corporations whose principal places of business are in Newark, Delaware (SLM and Navient Corporation) and Reston, Virginia (Navient Solutions), and that Defendants do business throughout the country, including this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

11. In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of 47 U.S.C. § 227(b)(1)(A)(iii)

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227. The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201, *et seq.*

3

prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

13. According to findings by the Federal Communication Commission ("FCC")— the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

14. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[4] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

## FACTUAL ALLEGATIONS

15. At all times relevant, Plaintiff was an individual residing in the State of Tennessee. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

---

[2] The Bipartisan Budget Act of 2015 (114 P.L. 74, 129 Stat. 584, 2015 Enacted H.R. 1314, 114 Enacted H.R. 1314), enacted into law on November 2, 2015, amends the Communications Act of 1934 to exempt calls made solely pursuant to the collection of a debt owed to or guaranteed by the United States.
[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).
[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).
[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

16. Plaintiff has never provided a cellular phone number to Defendants during a transaction that resulted in a debt owed to Defendants.

17. In fact, Plaintiff could not have provided a cellular phone number to Defendants during a transaction that resulted in a debt owed to Defendants, because he has never owed a debt to Defendants.

18. Defendants are corporations and each is a "person", as defined by 47 U.S.C. § 153(39).

19. Notwithstanding the fact Plaintiff has never provided a cellular phone number to Defendants during a transaction that resulted in a debt owed to Defendants, Defendants and/or other affiliates or subsidiaries of Defendants repeatedly contacted Plaintiff on Plaintiff's cellular telephone. Plaintiff received repeated, harassing calls at all hours from callers either acting on behalf of, acting as agents of, or calls directly from Defendants. Each time, Plaintiff told the callers that he had never taken out a student loan, that he had nothing to do with Defendants, and to stop calling, but these demands went unheeded by the callers and the calls continued unabated.

20. All telephone contact by Defendants and/or other affiliates or subsidiaries of Defendants to Plaintiff on his cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and all calls that are the subject of this Complaint occurred within four years of the filing of this Complaint.

21. The telephone number that Defendants and/or other affiliates or subsidiaries of Defendants used to contact Plaintiff, made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

22. The complained of telephone calls constituted calls not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

23. Plaintiff did not provide a wireless number to Defendants or otherwise provide express consent to receive calls via an "automatic telephone dialing system" by Defendants and/or other affiliates or subsidiaries of Defendants on Plaintiff's cellular telephone.[6]

24. Plaintiff did not provide "express consent" allowing Defendants or other affiliates or subsidiaries of Defendants to place telephone calls to Plaintiff's cellular phone by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

25. Neither Defendants nor other affiliates or subsidiaries of Defendants made telephone calls to Plaintiff's cellular phone "for emergency purposes" placed by an "automatic telephone dialing system," as described in 47 U.S.C. § 227(b)(1)(A).

26. Telephone calls by Defendants and/or other affiliates or subsidiaries of Defendants to Plaintiff's cellular phone placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

27. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants to demonstrate that Plaintiff provided express consent within the meaning of the statute.[7]

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated (hereinafter referred to as "the Class").

29. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the United States who, on or after December 21, 2011 and before November 2, 2015, received a non-emergency telephone call from

---

[6] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).
[7] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

> Defendants or any other affiliate or subsidiary of Defendants to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls, and all persons within the United States who, after November 2, 2015, received a non-emergency telephone call, which was not made solely to collect a debt owed to or guaranteed by the United States, from Defendants or any other affiliate or subsidiary of Defendants to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class. Excluded from the Class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

30.   Plaintiff does not know the exact number of members in the Class, but based upon the representations of Defendants as to their market share, Plaintiff reasonably believes that Class members number at minimum in the thousands. This Class size includes consumers holding loans owned or serviced by Defendants, persons who co-signed loans owned or serviced by Defendants, and all other persons who Defendants (mis)dialed. This Class size also includes consumers who received calls from other affiliates or subsidiaries of Defendants.

31.   Plaintiff and all members of the Class have been harmed by the acts of Defendants and/or of other affiliates or subsidiaries of Defendants.

32.   This Class Action Complaint seeks money damages and injunctive relief.

33.   The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Defendants.

34. There are well defined, nearly identical questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

   a. Whether, beginning on December 21, 2011, Defendants and/or other affiliates or subsidiaries of Defendants made non-emergency calls to Plaintiff and Class members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

   b. Whether Defendants and/or other affiliates or subsidiaries of Defendants can meet their burden of showing they obtained prior express consent (i.e., consent that is clearly and unmistakably stated) to make such calls;

   c. Whether the complained of conduct was knowing and/or willful;

   d. Whether Defendants are liable for damages, and if so the amount of such damages; and

   e. Whether Defendants and/or other affiliates or subsidiaries of Defendants should be enjoined from engaging in such conduct in the future.

35. As a person who received numerous and repeated telephone calls using an automatic telephone dialing system, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member. Plaintiff will fairly and adequately represent and protect the interests of the Class, and he has no interests which are antagonistic to any member of the Class.

36. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

37. A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small.  Management of

these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

38. Defendants and/or other affiliates or subsidiaries of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### I. FIRST COUNT: NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

39. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

40. The foregoing acts and omissions constitute numerous and multiple negligent violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227.

41. As a result of the alleged negligent violations of 47 U.S.C. § 227, Plaintiff and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

42. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting violation of the TCPA in the future.

43. Plaintiff and Class members are also entitled to an award of attorney fees and costs.

## II.   SECOND COUNT: KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

44. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

45. The foregoing acts and omissions constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227.

46. As a result of the alleged knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

47. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA in the future.

48. Plaintiff and Class members are also entitled to an award of attorney fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendants:

A. As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

B. As a result of the alleged willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C. Injunctive relief prohibiting such violations of the TCPA in the future;

D.	An award of attorney fees and costs to counsel for Plaintiff and the Class;

E.	An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.	A trial by jury; and

G.	Such other relief as the Court deems just and proper.

Respectfully Submitted,

**THE HIGGINS FIRM, PLLC**

_____/s/ Benjamin J. Miller_____
**BENJAMIN J. MILLER, BPR No. 25575**
525 4th Avenue South
Nashville, TN 37210
(615) 353-0930
ben@higginsfirm.com

*Attorneys for Plaintiff*